SPAULDING, Respondent, vs. THE TOWN OF SHERMAN, Appellant.

75  77
75  68
75  77
80  612

*October 21 — November 5, 1889.*

*Bridges: Injury from defect: Notice of condition of bridge: Proximate cause: Court and jury.*

1. Town authorities had actual knowledge that a bridge was in a defective condition, and had caused repairs to be made upon it. *Held,* that they were chargeable with notice of the fact that the timber in the bridge was decaying, and with the duty of having it thoroughly examined.

2. Upon the evidence in an action to recover for injuries alleged to have been caused by the breaking of a bridge, it is *held* to have been error to withdraw from the jury the questions whether the bridge was defective, and whether the falling of the bridge or the breaking of the axle of the plaintiff's wagon was the proximate cause of the injury.

APPEAL from the Circuit Court for *Clark* County.

Action to recover damages for personal injuries alleged to have been sustained by reason of the defective condition of a bridge in the defendant town. The facts will sufficiently appear from the opinion. The jury found a special verdict to the effect that the supervisors of the town did not exercise ordinary and reasonable care to keep and maintain the bridge in a reasonably safe and sufficient condition of repair; that the overseer or supervisors could, by the exercise of such care, have discovered the defect which caused the accident; and that there was no want of ordinary and reasonable care on the part of the plaintiff which contributed to bring about the accident. The jury also assessed the plaintiff's damages at $2,850. From the judgment entered on the verdict in favor of the plaintiff the defendant appealed.

For the appellant there was a brief by *R. J. MacBride* and *Chas. F. Grow,* and oral argument by *Mr. MacBride.*

They contended, *inter alia*, that the question whether or not the bridge was defective was purely one of fact for the jury. *Colley v. Westbrook*, 57 Me. 181; *Wheeler v. Westport*, 30 Wis. 392, 399; *Burns v. Elba*, 32 id. 605, 612; *Draper v. Ironton*, 42 id. 696; *Benedict v. Fond du Lac*, 44 id. 495; *Mellor v. Utica*, 48 id. 457; *Kaples v. Orth*, 61 id. 531; *Wright v. Fort Howard*, 60 id. 119; *McNamara v. Clintonville*, 62 id. 208. The existence of a defect cannot be inferred from the mere happening of the accident. *Grossenbach v. Milwaukee*, 65 Wis. 32; *Sorenson v. Menasha P. & P. Co.* 56 id. 338. If there was a defect, the question whether the town was chargeable with notice thereof was also a question of fact for the jury. *Colley v. Westbrook*, 57 Me. 181, 2 Am. Rep. 30; *Hall v. Fond du Lac*, 42 Wis. 274; *Sheel v. Appleton*, 49 id. 125; *Harriman v. Boston*, 114 Mass. 241, 246; *Hume v. New York*, 47 N. Y. 639; *Mosey v. Troy*, 61 Barb. 580; Thompson on Trials, 1249. Where the defect was latent and apparently recent it is held necessary to prove *actual* notice. *McGinty v. Mayor*, 5 Duer, 674; *Garrison v. Mayor*, 5 Bosw. 497. See, also, *McCormick v. Washington*, 112 Pa. St. 185, 2 Cent. Rep. 584; *Hicks v. Chaffee*, 13 Hun, 293; *Ford v. Umatilla Co.* 15 Oreg. 313. It was error to charge the jury that if the supervisors " had actual knowledge that some parts of the bridge similar to this one that was defective were in fact rotten,— had been in fact rotten before that,— that would be sufficient knowledge which should put them upon their guard and make it their duty to inquire and examine whether the bridge was safe, and put it in a safe condition of repair." The facts in this case are not like those in *Spearbracker v. Larrabee*, 64 Wis. 578; and it should be governed by the doctrine laid down in *Carter v. Monticello*, 68 Iowa, 178; *Ferguson v. Davis Co.* 57 id. 601, and kindred cases.

For the respondent there was a brief by *Sturdevant & Sturdevant*, and oral argument by *A. L. Sanborn*. To the

point that the town officers were chargeable with notice of the condition of the bridge, they cited *Shaw v. Sun Prairie*, 74 Wis. 105; *Hughes v. Muscatine Co.* 44 Iowa, 672; *Humphreys v. Armstrong Co.* 56 Pa. St. 204; *Rapho v. Moore*, 68 id. 404, 8 Am. Rep. 202; *Weisenberg v. Appleton*, 26 Wis. 56; *Jaquish v. Ithaca*, 36 id. 108; *Ripon v. Bittel*, 30 id. 614; *Spearbracker v. Larrabee*, 64 id. 573; *Stebbins v. Keene*, 60 Mich. 214; *Ferguson v. Davis Co.* 57 Iowa, 601.

COLE, C. J.   While we think one exception taken to the charge of the circuit court is good and must work a reversal of the judgment, we cannot say, on the proofs adduced, on the trial, that there can be no recovery against the town for the injuries sustained by the plaintiff.   This is what the learned counsel for the defendant asks us to declare upon all the facts submitted.   There was certainly ample testimony in the case from which the jury might find that the bridge in question was unsafe, and that the officers of the town, in the exercise of reasonable care and diligence, could have discovered the defect and repaired it.   It is an indisputable fact that, a short time before the accident, the town authorities had actual knowledge that the bridge was in a defective condition, and had caused repairs to be made upon it.   This was certainly notice to them that the timber in the bridge was decaying, and required them to make a thorough inspection of the structure, or have it examined by a competent bridge builder, to ascertain its true condition.   This degree of responsibility was imposed upon them by what they had learned or knew about the bridge.   Such, in effect, was the decision of this court in *Shaw v. Sun Prairie*, 74 Wis. 105, which involved a kindred question as to latent defects in the sidewalk, by which the plaintiff was injured.   This rule does not impose too great diligence and care upon town authorities under such circumstances.   In this case the jury found, in answer to questions submitted,

that the officers of the town did not exercise ordinary and reasonable care to keep and maintain a bridge where the accident occurred; that it was not reasonably safe; and that the officers, in the exercise of due care, could have discovered the defect. There was abundant evidence to sustain these findings, but, as there must be a new trial, we shall not discuss it.

We will now proceed to notice the error in the charge of the court to which we have referred. It appears that the plaintiff was injured while crossing the bridge, driving a team and wagon loaded with shingles. He was traveling in a northerly direction, and had passed over the greater portion of the bridge. He describes the cause and manner of the accident in his testimony as follows: "There was a post mortised into the mud-sill, and a beam ran across the mortise into this post, and the end of this tenon was rotted off, and let the beam drop, and the post dropped out this way to the ground, and this beam dropped down, and the plank dropped down, and my feet caught under the plank. On the bridge there was a railing on the top of a post, and this railing swung off to one side, and my feet caught under the plank of the bridge, and this railing swung over them. It was the cross-beam that gave way. I was thrown to the left. It was the west side of the bridge, or the nigh side, that broke down. This tipped the load over, turned the wagon bottom side up, and scattered the load all along the side of the bridge. . . . At the time of the accident I was sitting on the front end of the load. Portions of that load of shingles fell upon me. When I fell the load turned bottom side up, and the shingles went over onto me. There were four bunches of shingles lying on my broken limb. . . . The load turned bottom side up, and the wagon turned upon its side, and that turned the rack so that it laid bottom side up. It laid directly over me; broke the front axle out of the wagon." In another place of his testimony

he says, on cross-examination, " that this axle broke in the wagon at the time the bridge broke. I do not know what caused the break of the axle; whether the breaking of the bridge caused it or not."

In its charge the court, among other things, said to the jury that there was no dispute upon the testimony of the fact that the plaintiff received an injury by reason of the falling of the bridge; that there was no dispute upon the testimony that the bridge was defective. This charge was excepted to, and it is now insisted that it related to mere questions of fact, which should have been submitted to the jury on the evidence, and should not have been decided by the court as matters of law. We are clearly of the opinion that these questions should not have been withdrawn, as they were, from the consideration of the jury. The evidence in regard to them is not so clear and undisputed as justified the court in deciding them as questions of law. Furthermore, we think it was for the jury to determine whether the bridge was defective; and, in view of the plaintiff's testimony as to the breaking of the axle, the jury should have been instructed to determine whether the breaking of the axle or the falling of the bridge was the proximate cause of the injury. The evidence is very obscure as to how the breaking of the axle affected the load upon the wagon. If it was the efficient cause of throwing the wagon over, with its load, upon the bridge, it may have broken that structure down, when otherwise the plaintiff would have crossed it in safety if the axle had not broken.

It is said on the part of the plaintiff that there is not a particle of testimony which tends to show that the breaking of the axle had any effect whatever upon the load in the wagon; that the axle broke as a consequence of the bridge falling; and that no other inference can be made on the facts. On the other side it is insisted that it was the broken axle which caused the injury; that when it broke

it threw the load of shingles violently upon the bridge, and broke it down. At first we had some doubt whether there was sufficient evidence to carry the question to the jury as to whether the breaking of the axle did cause the injury; but, after a careful examination of all the evidence, we think that question should have been submitted, and that the court should have directed the jury to determine whether the breaking of the axle or the falling of the bridge was the proximate cause of the injury, and that it was error not to so charge upon the testimony which had been adduced on the trial. So, without considering any other question discussed, we reverse the judgment for this error in the charge, and send the case back for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.